**FLYNN ex rel. MOY YOU HUNG v. WARD, Com'r of Immigration.**

No. 3278.

Circuit Court of Appeals, First Circuit.

Dec. 31, 1937.

Walter Bates Farr, of Boston, Mass. (Everett Flint Damon, of Boston, Mass., on the brief), for appellant.

Edward O. Gourdin, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from an order or decree of the District Court for Massachusetts dismissing a writ of habeas corpus and remanding the applicant, Moy You Hung, to the custody of the Commissioner of Immigration for deportation to China.

The applicant claims the right of admission to this country as a foreign-born son of Moy Wing, an alleged citizen of the United States. It appears that hearings were had before a Board of Special Inquiry at Boston on March 15, 16, 17, 22, and 23, 1937; that while the Board was satisfied as to the citizenship of the alleged father, it was not as to the claimed relationship of the applicant, and recommended that he be excluded as an alien not a member of any of the exempt classes entitled to come into the United States; that an appeal was taken to the Secretary of Labor; that the appeal was heard on April 27, 1937, before a Board of Review which rendered an opinion in which, after stating that the issue was that of the relationship of the applicant, who claimed to have been born February 9, 1900, it concluded that, in view of the improbability that Moy Wing was of sufficient age at the time of the applicant's birth to have been his father, and of some discrepancies in the testimony given by the applicant, his brother Moy Hung Git, and the identifying witness Woo Loo Jung, the relationship was not satisfactorily established and recommended that the appeal be dismissed. The Assistant Secretary of Labor so ordered. Thereupon this writ of habeas corpus was prosecuted and, after a hearing in the District Court at which the only evidence submitted was that introduced before the immigration authorities, the decree here appealed from was entered.

The ground of complaint is that the immigration authorities acted arbitrarily in finding that the relationship did not exist, and without any substantial evidence for its support.

At the time Moy You Hung applied for admission in March, 1937, he was thirty-seven years of age. His alleged father was then dead, having died in China May 24, 1936, and his alleged brother, Moy Hung Chuck, who was admitted to the United States in August, 1926, as a son of Moy Wing, was away on a trip to China.

The Board of Review found that the citizenship of Moy Wing was "res adjudicata," he having been discharged as a citizen by Judge Barnard of the Supreme Court of the District of Columbia on August 14, 1906; that he was then seventeen years of age, was born in 1889, went to China with his parents at the age of five (1893 or 1894), and returned to the United States in 1902, then being thirteen years old; that he could not have been more than eleven when the applicant, Moy You Hung, was born in 1900, and nine months or so younger when conception could have taken place; and that, consequently, the applicant could not have been the son of Moy Wing. This, undoubtedly, was the real ground upon which the exclusion order was based. It is true that certain discrepancies in the testimony were alluded to by the Board, but they were of a collateral nature and had no real bearing on the question of relationship and are of little or no importance.

The applicant testified that his given name was Moy You Hung and his married name Moy Huk Wah; that he was born in February, 1900, in Chung Sing Village, S. N. D., China, where he had always lived; that he was the son of Moy Wing and was married to Ng She in Chung Sing Village January 15, 1919; that he had two sons living, Moy You Gin, eighteen years old, born January 9, 1921, and Moy You Ngan, fifteen years old, born September 25, 1923; that he had a daughter born April 1, 1930, who had no name and lived only two hours; and that his wife was an expectant mother and had been for a little more than three months; that his mother's name was Loo She; that she died in the home village January 30, 1928, and ten days before the alleged father, Moy Wing, arrived in China; that, if now living (1937), she would be fifty-eight years old; that Moy Wing was fifty-seven years old when he died May 24, 1936; that shortly after Moy Wing arrived in China in 1928 he married a second time; that he had eight brothers but no sisters; that three of his brothers were by his father's first wife, and the remaining five were by his second wife; that he was a son by the first wife and the names of all his brothers were: Moy Hung Chuck, twenty-eight years old, born May 8, 1910; Moy Hung Git, twenty-seven years old, born January 16, 1912; Moy Hung Hen, twin brother of Moy Hung Git; Moy Hung Fook, ten years old, born December 13, 1928; Moy Hung Hee, nine years old, born December 12, 1929; Moy Hung Seow, eight years old, born January 23, 1931; Moy Hung Song, seven years old, born January 27, 1932; and

Moy Hung Seung, five years old, born February 9, 1933. That all of these children of Moy Wing were born in Chung Sing Village; that the three oldest and the applicant were by his father's first wife; that he was the only son that was married; that he had lived in his father's house in Chung Sing Village since he could remember; that, after his marriage in 1919, he had continued to live in that house with his wife and the two sons that were born to them down to the time of his coming to this country in 1937, first with his mother down to the time of her death in 1928, and thereafter with his father, Moy Wing, and his second wife and the children born of the second wife. He described the home village, the people living in the various houses, the rows of houses and the number of houses in each row, the schoolhouse where he and his brothers attended school, the burial ground of his ancestors, and the house in which his father, his brothers, he and his sons and the other members of the family lived. He testified that his brothers Moy Hung Chuck and Moy Hung Git came to the United States in 1926 and were admitted as the sons of Moy Wing; that Moy Hung Hen, the twin brother of Moy Hung Git, came to the United States in 1927 and, on being refused admittance, returned to, China and was now working in Gung Yick City; that his father, Moy Wing, was taken sick late in January, 1936, and during his sickness was visited several times by Woo Loo Jung, who had worked with his father for many years in the United States and had returned with him to China in 1928; that on these visits Woo Loo Jung saw the applicant and the other members of the father's family. He further testified that, after the death of his father, he arranged to come to the United States and that he sent, among other things, his father's return certificate, issued the latter part of 1927.

Moy Hung Git, an alleged brother of the applicant, was admitted to the United States in 1926, when fourteen years of age. In his testimony he corroborated that of the applicant as to Moy Wing and his sons, their ages and dates of birth, the two marriages of Moy Wing, the marriage of the applicant and the children he had, the home where they all lived in Chung Sing Village, describing the houses in the village and the people occupying them, the ancestral burial ground, and otherwise corroborated the testimony of the applicant.

Woo Loo Jung identified a photograph of the applicant and testified as to his visits in the applicant's home village upon his sick father, referred to the members of the father's family and that of the applicant, and that he saw them in that village living in Moy Wing's house. Woo Loo Jung returned to the United States after that on the President Grant, landing at Seattle May 13, 1936, where he was interrogated by the immigration service and, according to the file records, stated to the immigration authorities at that time that he visited the family of Moy Wing in Chung Sing Village and saw Moy Wing, his wife and seven sons; that two of his sons, Moy Hung Chuck and Moy Hung Git, were in the United States; that he saw Moy You Hung there and the five younger sons by Moy Wing's second wife, naming them and giving their ages.

In the records of the Immigration Department, put in evidence in this case, is the testimony given at the time of the admission of the applicant's brothers, Moy Hung Chuck and Moy Hung Git in 1926, and that given in 1927 when Moy Hung Hen, the twin brother of Moy Hung Git, applied for admission. The testimony then given, which included that of the three alleged brothers of the applicant by the first wife of Moy Wing, depicted the family of Moy Wing and that of the applicant living together in Chung Sing Village, in Moy Wing's house, and was in substance the same as that heretofore outlined as testified to by the applicant. At those times Moy Wing's first wife was alive. At the various times the sons of Moy Wing have testified before the immigration authorities they have given the names and the respective ages of the four sons by the first marriage and stated the age of Moy Wing to be such as to make him born in 1880 or about that time; and the testimony given by Moy Wing on these occasions states the names and ages of his four sons then constituting his family, and gave his own age to be such as to make him born about 1880. There can be no doubt that Moy Wing's family, in 1926 and 1927 when this testimony was given, consisted of his first wife and the four boys and that the boys had lived together with their mother in the home village down to the time they began to come to the United States, and that Moy Wing was the father of the applicant. He was first married to Loo She. The testimony as

to the time of that marriage is that it took place sometime in 1899. There is none that it took place at a later date. In 1899 Loo She was twenty years old and if Moy Wing, as the Board of Review seemed to think, was then ten years old, he certainly was too young to marry. On the other hand, the great body of the evidence is that he was then nineteen years old. It is absurd to think that a boy of ten years would marry a woman of twenty, but there is no doubt that Moy Wing married Loo She. The evidence clearly shows that the applicant is the oldest son of Moy Wing and Loo She. From the earliest records in the Immigration Department down to this date, every time Moy Wing was inquired of about his children he gave the applicant as his oldest son and the date of his birth as 1900. The records cover a period of seventeen years prior to 1928, when he went to China and remained there. Other records, from 1926 to and including 1937, show that the applicant, before and after his marriage in 1919, lived with his wife and children in Moy Wing's family until 1937 and that his wife and children live there now.

As to these matters the evidence is that Moy Wing, when a child about five years of age, went to China with his father and mother and remained there until 1902, when he returned to the United States; that he landed at Vancouver and went by train from there to Montreal and thence to Port Henry, N. Y.; that he was accompanied by his brother, a year older than he; that on arriving at Port Henry they were arrested and taken before United States Commissioner Dudley for trial; that Mon Dong, a brother of Moy Wing's mother, gave the only testimony in behalf of Moy Wing and his brother before the Commissioner and at that time testified that the brother was twenty-four years old and Moy Wing twenty-three; that he (Mon Dong) first came to this country with his sister and her husband; that they landed at San Francisco in January of the third year of Kwong Suey; that they remained at San Francisco two days and then went to Portland where he worked in his sister's husband's store; and that Moy Wing and his brother were born in Portland. As Moy Wing did not testify before Commissioner Dudley there is no record of statements by him, on his first return to the United States, showing whether he was then married or had children, and no such inquiry was made of him before Judge Barnard in 1906. His sec-

ond trip to China, according to the records of the Immigration Department, was made in January, 1910. On January 3, 1910, he signed and swore to an affidavit which he filed with the Department to facilitate his landing on his return to the United States, and on the same day he left San Francisco on the steamer Korea. His picture is attached to the affidavit. The records also show that he returned to the United States on the Steamer Korea and landed at San Francisco on the 24th day of November, 1911, and the file record made upon that return contains his picture and a statement made by him before the inspector and interpreter at that port, which he signed and swore to. According to that statement he was thirty-one years old, was married and his wife was still alive; that he was married K. S. 24-12-2; that he had two children, both boys, and the name of one was Moy You Hung, aged twelve, and that of the other was Moy Hung Chuck, aged two; and that they were living in China.

On August 3, 1927, the records show that Moy Wing applied to the Commissioner of Immigration at Baltimore to have his status preinvestigated, as he intended to visit abroad, and that on the 23d of August he made application for a return certificate as a native born citizen of the United States, appeared before the immigration authorities, was sworn, and stated that his given name was Moy Wing and his married name was Moy Hee Gai; that he was forty-eight years old, born in Portland in the United States; that the date of his birth was September 14, 1880 (K. S. 6-8-10); that he went to China at the age of six and returned to the United States through Port Henry in 1902; that the village he went to in China on the first trip was Chung Sing Village, S. N. D.; and that on his second trip to China, he went to the same village. On this occasion (1927) he was asked if he had any children at the time he entered through Port Henry in K. S. 28 (1902), and he answered that he had one son at that time; that his name was Moy You Hung, who was born in Chung Sing Village, S. N. D., K. S. 26-1-26; that his three other children were Moy Hung Chuck, eighteen years old, born November 30, 1910; Moy Hung Git, seventeen years old, born January 16, 1912; Moy Hung Hen, seventeen years old, the latter being a twin to Moy Hung Git. Having obtained a return certificate, the evidence is that he departed for China in January, 1928, and continued to live at his home

in Chung Sing Village down to the time of his death in May, 1936.

When he was discharged at Port Henry in 1902 by Commissioner Dudley, he was given a discharge certificate with his picture upon it for identification. Shortly after his discharge he went to New York City, stayed there awhile, and then went to Washington. While in Washington he either lost or had stolen from him Commissioner Dudley's certificate, and being unable to produce any paper showing his right to remain in this country he was arrested by the immigration authorities and brought before Judge Barnard of the Supreme Court for the District of Columbia for trial as to his right to be and remain in the United States. In the course of the trial it developed that Moy Wing came in through Port Henry in 1902 and the immigration officials procured the docket entries and the testimony given at the hearing before Commissioner Dudley and used them at the trial in 1906. To the testimony given at Port Henry was attached a picture of the Moy Wing who came in through that port in 1902, which Commissioner Dudley had retained and which showed that the Moy Wing of the picture was the same Moy Wing who was on trial before Judge Barnard. It was at this trial before Judge Barnard in 1906 that Moy Wing stated that he was seventeen years old and was born in San Francisco, upon which the Board of Review based its finding that he was not of sufficient age to have been the father of the applicant.

The Board of Review, however, did not refer to and apparently did not take into consideration the fact that it appeared in the testimony of Moy Wing before Judge Barnard that he stated to Mr. Coy, the interpreter, that he was at that time twenty-five years old and later in his testimony said he was twenty-two years old. It is apparent from reading the testimony which he gave at that time that he was so frightened and upset from the loss of his certificate of discharge issued by Commissioner Dudley in 1902 that little credit could have been given his testimony before Judge Barnard and that his discharge by the latter was based largely upon the discharge given by Commissioner Dudley and the testimony of his maternal uncle showing that he was twenty-three years old and was born in Portland, Oregon, and not in San Francisco.

The Board of Review, however, in reaching the conclusion which it did, entirely disregarded the testimony of all the witnesses at the hearings before the Board of Special Inquiry and all the record evidence given by persons other than Moy Wing, showing the members of Moy Wing's family, which included the applicant, and all the record evidence given by Moy Wing, except what he gave at the trial before Judge Barnard, for it said: "It is, therefore, quite apparent that on the basis of the 1906 court record the alleged father was not of sufficient maturity to have had a child born on K. S. 25-1-10 (February 19, 1899), the first date of the record given for the birth of this alleged child, or on K. S. 26-1-10 (January 30, 1900), which is the date of birth given subsequently and at the present time, as he would have been only nine or ten years old in K. S. 25 or ten or eleven years old in K. S. 26, and according to the one date of birth conception would have had to take place at eight or nine years of age and at nine or ten years according to the other date." In other words, the Board of Review gave credit to a portion of the testimony of Moy Wing before Judge Barnard in 1906, disregarded the other portion, and disregarded the testimony of the uncle given before Commissioner Dudley in 1902, and which was before Judge Barnard in 1906, showing that he was twenty-three years old when he entered at Port Henry, gave credit to what Moy Wah stated about his brother, Moy Wing, at Chicago in 1917—"He is not married"—but disregarded the statement that Moy Wing was twenty-three years old in 1902, and totally disregarded all the evidence given by other witnesses before the Board of Special Inquiry and all the record evidence in the Department of Immigration showing that Moy Wing was born as early as 1880 and was old enough to have had a son born at the time that the applicant claims he was born, and entirely disregarded all the other evidence in the case given orally or shown by records of the Department, depicting the family of Moy Wing at his home in Chung Sing Village, which always included the applicant as the oldest son of the family.

There can be no question as to the identity of the Moy Wing discharged in 1906 by Judge Barnard with the Moy Wing discharged in 1902 by Commissioner Dudley. The Board of Special Inquiry, in its findings, so declares. And the various photo-

graphs attached to the Port Henry record of 1902, to the court record of Judge Barnard in 1906, to the landing certificate of the Immigration Department of 1911, and to the return certificate of 1927, all show one and the same person. And when, in addition to this, it is considered that Moy Wing claimed the applicant as his son in 1911, in 1926 and in 1927 when he obtained his citizen's return certificate, and that his sons, those who were admitted and the one that was rejected, all testified that the applicant was their brother and lived with them in the family down to his marriage in 1919 and thereafter with his wife and children as they were born, no other reasonable conclusion can be drawn than that the Board of Review acted arbitrarily and unfairly in reaching the conclusion that Moy Wing never had and could not have had such a son and the relationship was not established.

The order or decree of the District Court is vacated, and the case is remanded to that court, with directions to enter an order or decree discharging the applicant from the custody of the Commissioner of Immigration.